IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 345

| | |
|---|---|
| TONYA R. CHAPMAN,             )<br>)<br>Plaintiff,   )<br>v.                          )<br>)<br>OAKLAND LIVING CENTER, INC.,   )<br>ARLENE SMITH, MICHAEL SMITH,   )<br>and STEVE SMITH,              )<br>)<br>Defendants.   )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 10), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the Motion[1], the parties' arguments, and applicable authorities, the undersigned respectfully recommends that the Motion be denied.

I. Relevant Procedural Background

Plaintiff Tonya Chapman ("Chapman"), appearing *pro se*, filed her Complaint (Doc. 1) on December 3, 2018.

Defendants Oakland Living Center, Inc., ("Living Center"), Arlene Smith,

---

[1] The undersigned did not consider or rely upon that Exhibit attached to Plaintiff's Complaint and labeled "Letter from Defendants Attorney" ("Letter"). (Doc. 1) at 11, which exhibit is the subject of Defendants' Motion to Strike.

Michael Smith, and Steve Smith (collectively "Defendants") filed the instant Motion to Dismiss (Doc. 10) and a Brief in Support (Doc. 10-1) on January 16, 2019.[2]

Chapman responded on January 23, 2019 (Doc. 14), and Defendants replied on January 30, 2019 (Doc. 17).

## II. Factual Background

Viewing the allegations in the light most favorable to Chapman, the Complaint alleges as follows:

Chapman was employed at the Living Center from approximately 2004 through 2015 as well as in July and August of 2018. Pl.'s Compl. (Doc. 1) at 3, 7-8. Chapman performed various jobs, including housekeeper, dietary cook, and personal care aide. Id. at 7.

On several occasions, Chapman asked about becoming a medical technician but was told, "No, I wouldn't be interested or (Arlene) has enough girls going to take the test." Id. Chapman alleges that, "[t]o [her] knowledge, Oakland Living Center has not had a black MedTech." Id.

Chapman's birthday appears to coincide with the birthday of the twin

---

[2] Defendants also filed their Answer on January 16, 2019 (Doc. 12). A notice regarding the Pro Se Settlement Assistance Program was provided to Chapman as well (Doc. 13). Chapman opted into the Program but further proceedings under the Program were deferred pending the outcome of the instant Motion and a separate Motion to Strike (Doc. 11) filed by Defendants. See (Doc. 19).

children of Defendant Steve Smith. Chapman alleges that a monkey themed birthday party was held for the children in 2014 at which time Chapman "was given a cake with a noosed up black hangman . . .."[3] Id. at 7.

In July 2018,[4] Steve Smith's child entered the kitchen where Chapman was preparing cupcakes for the residents of the Living Center. Id. at 8. When Chapman would not let the child interfere with Chapman's preparation of the desserts, the child allegedly told Chapman that his father had called her a racially derogative name. Id. The child himself then directed that slur at Chapman. Id. She asked him to stop but his language continued, and he kicked Chapman and hit her "on the bottom." Id.

Chapman subsequently spoke to her supervisor, Pattie Warmer ("Warmer"), and asked "if there were any black employers" at the Living Center. Id. Warmer responded in the negative and stated, "black women apply but [are] usually never hired." Id. Chapman also informed Warmer of the child's "language toward [her] and [Warmer] had no comment."[5] Id.

On August 24, 2018, while Chapman was again working in the kitchen at the Living Center, Steve Smith's son asked Chapman to come outside,

---

[3] The identity of the person(s) who gave Chapman the cake is not disclosed.

[4] This episode is described as being "an early incident in the kitchen." Id. at 8. Reading this allegation together with paragraphs C. 2 and 5, it appears that this episode occurred in July 2018.

[5] The date of Chapman's exchange with Warmer is not specified.

3

apparently to watch him ride his bicycle, which she did. Id. at 7. Afterward, she returned inside to clean the dining room at which point the child came to the window and directed racial slurs at Chapman. Id. Chapman closed the window and continued cleaning the dining room. Id.

Chapman alleges that "[s]omeone at the home told Steve Smith." Id. He approached Chapman and she confirmed what happened. Id. at 8. Smith told Chapman he would "straighten [the child] out about the incident." Id.

Chapman alleges that she was humiliated and watched the staff point and stare at her, laughing. Id.

Chapman appears to allege that the child then returned and again used the racial slur toward her. Id.

Chapman alleges that her coworkers distanced themselves from her, that she finished the kitchen dishes, and that she advised Warmer that she "was going to leave this time because it will stop." Id.

Chapman also alleges the following, though no specific timeframe is given:

- "Defendant" stated that he/she/they had to purchase a different beach property because of "all the blacks at Myrtle beach". Id. at 7.

- When Chapman's official employee badge was being created by Arlene and Michael Smith, "[she] was forced to turn to the side and be photographed for their amusement," and Arlene Smith told Chapman

4

that she would be given a "slave number" on her badge. Id.

- Chapman was "force[d] to quit her job." Id. at 4.

### III. Legal Standards

#### A. Rule 12(b)(6)

When presented with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint on its face states a plausible claim for relief. See Francis v. Giacomelli, 588 F. 3d 186, 189-90, (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In this regard, the court accepts the well-pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). The court, however, is not required to accept as true "legal conclusions, elements of a cause of action, bare assertions devoid of further factual enhancement, unwarranted inferences, unreasonable conclusions, or arguments." Richardson v. Shapiro & Brown, LLP, 751 F. App'x 346 (quoting Consumeraffairs.com, 591 F.3d at 255) (internal quotation marks omitted).

#### B. *Pro Se* Pleadings

Federal courts extend latitude to the pleadings of *pro se* litigants. See e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (noting that *pro se*

5

pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). However, "a district court is not required to act as an advocate for a *pro se* litigant." Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978); accord United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012).

## IV. Discussion

Chapman's claim is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2.

To make out a claim for a racially hostile work environment under Title VII, a plaintiff must show that: (1) the conduct to which he or she was subjected was unwelcome; (2) the harassment was based upon his or her race; (3) the conduct was sufficiently severe or pervasive to create an abusive work environment; and (4) there is some basis for imposing liability on the employer. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001).

Each element is addressed below in turn.

### 1. Unwelcome Conduct

The first element "is not a high hurdle" for a plaintiff to clear. Strothers v. City of Laurel, Maryland, 895 F.3d 317, 328 (4th Cir. 2018). An employee

6

need only "voic[e] her objection to the alleged harasser or to the employer.". Id. at 328-29.

Here, this element is satisfied; Chapman alleges that she told her supervisor, Warmer, of Steve Smith's son's "language towards [her]" and alleges that Steve Smith was informed of the incidents on August 24, 2018. Pl.'s Compl. (Doc. 1) at 7.

### 2. Conduct Motivated by Race

The second element requires the Court to "view the behavior in light of the social context surrounding the actions." Strothers, 895 F.3d at 329 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)).

Even taking the allegations in the light most favorable to Chapman, the plausibility of her allegation that the birthday cake was racially motivated is questionable; the picture of the cake (attached to the Complaint as Exhibit A) does not seem to support her characterization. Notwithstanding this exception, Chapman's other allegations satisfy the second element. See Shields v. Fed. Exp. Corp., 120 F. App'x 956, 961 (4th Cir. 2005) (per curiam) (employee's use of racially offensive terms was clearly highly offensive, unwelcome, and racially motivated); Roberts v. Fairfax Cty. Pub. Sch., 858 F. Supp. 2d 605, 610 (E.D. Va. 2012) (finding that "[w]here such an abhorrent slur is alleged, there is no question that its use was offensive, unwelcome, and racially motivated").

7

### 3. Severe or Pervasive Conduct

When determining whether conduct is sufficiently severe or pervasive for purposes of the third element, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Strothers, 895 F.3d at 331 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). To satisfy this element, a plaintiff must demonstrate both that she subjectively perceived the harassment as being hostile, and that the harassment would be viewed similarly by a reasonable person. Harris, 510 U.S. at 21–22.

This element is not satisfied if an employee's claim is based on "simple teasing," Oncale, 523 U.S. at 82, "offhand comments" or "isolated incidents (unless extremely serious)," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). At the same time, a pattern of relentless abuse is not required; this element can be met by "a single extremely serious act of harassment or by a series of less severe acts." Robinson v. Perales, 894 F.3d 818, 828 (7th Cir. 2018), reh'g denied (July 24, 2018) (citing Haugerud v. Amery Sch. Dist., 259 F.3d 678, 693 (7th Cir. 2001) (recognizing "that harassment need not be both severe and pervasive"). A limited number of severe race-based incidents may be sufficient to establish this element. See Boyer-Liberto v. Fontainebleau

8

Corp., 786 F.3d 264, 280 (4th Cir. 2015) (en banc) (concluding that a reasonable jury could find that two uses of a racial epithet by —"whether viewed as a single incident or as a pair of discrete instances of harassment—were severe enough to engender a hostile work environment.")

The question of whether the conduct set forth in Chapman's Complaint meets the severe or pervasive element is a close one. For instance, Chapman does not describe an atmosphere in which racial slurs were used pervasively.

Nonetheless, Chapman does reference specific conduct that allegedly occurred during July and August 2018 in which a racial epithet was repeatedly directed at her, the lone black employee of the Living Center, with some instances occurring after she complained to her supervisor. See Pryor v. United Air Lines, Inc., 791 F.3d 488, 496–97 (4th Cir. 2015) (citing Rodgers v. Western–Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993)) (recurrent use of the word n****r is "the kind of insult that can create an abusive working environment in an instant"); see also Spriggs, 242 F.3d at 185 ("Far more than a mere offensive utterance, the word 'n[****]r' is pure anathema to African–Americans") (internal citations omitted). In addition, Chapman alleges that other racially motivated statements were made, including Defendants' reference to a "slave number" in providing Chapman with her employee badge and complaints about the number of African Americans at Myrtle Beach.

Taken as a whole, Chapman's allegations are sufficient to satisfy the

9

severe or pervasive element of a hostile work environment claim.

### 4. Imposition of Liability on Defendants

Defendants' argument with respect to the final element focuses on whether Defendants may be held liable for the racial slurs allegedly used by Steve Smith's son, who was neither an employee nor agent of the Living Center. Defs.' Br. (Doc. 10-1) at 4-5.

The Fourth Circuit has adopted a negligence standard for analyzing an employer's liability for third party harassment in Title VII claims. Freeman v. Dal-Tile Corp., 750 F.3d 413, 422-23 (4th Cir. 2014). That is, "an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." Id. at 423 (citations omitted.)

Here, Chapman has alleged that Defendants were aware of the child's conduct, and Chapman's objection to it, at least in July of 2018. The child's conduct continued, however, the following month.

### V. Recommendation

While it is unknown whether Chapman's claims will survive testing at a later stage of this litigation, the allegations in her Complaint, when viewed cumulatively and taken in the light most favorable to Chapman, and further in consideration of her status as a *pro se* litigant, are sufficiently plausible for

10

purposes of Rule 12(b)(6).

Accordingly, the undersigned respectfully RECOMMENDS that Defendants' Motion to Dismiss (Doc. 10) be DENIED.

Signed: July 1, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).