THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00345-MR-WCM

| TONYA R. CHAPMAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **O R D E R** |
|  | ) |  |
| OAKLAND LIVING CENTER, INC., | ) |  |
| ARLENE SMITH, MICHAEL SMITH, | ) |  |
| and STEVE SMITH | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment. [Doc. 49].

## I. PROCEDURAL BACKGROUND

On December 3, 2018, Tonya R. Chapman (the "Plaintiff") initiated this action against Oakland Living Center, Inc., ("OLC"), Arlene Smith, Michael Smith, and Steve Smith (the "Individual Defendants") (collectively "the Defendants"). The Plaintiff initially filed this action *pro se* [Doc. 1], but later retained counsel who filed an Amended Complaint wherein the Plaintiff asserted claims for harassment, discrimination, and constructive discharge brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et. Seq. ("Title VII"), and under 42 U.S.C. § 1981 ("Section 1981"). [Doc. 39].

On September 3, 2020, the Defendants filed their Motion for Summary Judgment as to all the Plaintiff's claims. [Doc. 49]. The Plaintiff, having apparently parted ways with her attorney, filed a response in opposition *pro se*. [Doc. 60].[1] A hearing was held on October 23, 2020, in which the Plaintiff appeared *pro se* and the Defendants were represented by counsel. This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers, admissions, stipulations, affidavits, and other materials on the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)&(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003)

---

[1] The Plaintiff previously attempted to respond but the response was deemed insufficient as a matter of law. This Court granted the Plaintiff's request for additional time to respond and scheduled a hearing on the matter. [Doc. 58].

(emphasis in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

"Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020) (quoting News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)). The Court does not make credibility determinations or weigh the evidence. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). "Regardless of whether [they] may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue exists. Id.

In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Smith v. Collins, 964 F.3d 266, 274 (4th Cir. 2020).

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

OLC is a corporation owned by Defendants Michael Smith and Arlene Smith that operates an assisted living facility in Rutherfordton, North Carolina. [Doc. 39 at 1; Doc. 40 at 2]. Michael and Arlene Smith's son, Defendant Steve Smith, is a supervisor and employee at OLC. [Chapman Dep., Doc. 51-1 at 8–9]. The Plaintiff, who is African American, first worked for OLC from 2004 until 2015. [Id. at 2, 4–5]. In 2018, the Plaintiff resumed working there as a weekend cook. [Id. at 64–65].

Steve Smith's children, who are Michael and Arlene Smith's grandchildren, often visited and played at OLC's facility. [Id. at 30]. In July of 2018, while the Plaintiff was working in the kitchen making cupcakes, Steve Smith's youngest child, who was six years old at the time, entered the kitchen and wanted to help decorate the cupcakes. [Id. at 29–30]. When the child finished decorating the cupcakes the Plaintiff had set aside for him, the Plaintiff would not let him interfere further with the preparation of the remaining cupcakes. The child then hit and kicked the Plaintiff and told the Plaintiff that "My daddy called you a lazy ass black n*****, because you didn't come to work." [Id. at 31, 33] (hereinafter, the "July incident"). The Plaintiff

4

told the child to stop but did not report the incident. [EEOC Charge, Doc. 51-3].

On August 24, 2018, while the Plaintiff was working, the same child asked the Plaintiff to come outside to watch him ride his bicycle, which she did. [Doc. 51-1 at 40–41]. While the Plaintiff was watching, Steve Smith asked his son to come speak with him. While the child was speaking with his father, the Plaintiff went inside and returned to work. [Id. at 41]. The child then went up to the window of the facility and yelled for the Plaintiff to come over. When the Plaintiff went to the window, she told the child she had to work. [Id.]. The child then said "N*****, n*****. Get to work, n*****." [Id. at 41–42].

The Plaintiff immediately returned to work and told her co-worker, Patricia Warner, what the child said to her. [Id. at 41]. Warner told Steve Smith that his son had called the Plaintiff "an 'n' word." [Steve Smith Dep., Doc. 51-4 at 16]. Steve Smith came to the kitchen and asked the Plaintiff if his child had "sa[id] something ugly" to her and the Plaintiff told him, "Yes, he did." [Doc. 51-1 at 44]. Steve Smith told the Plaintiff that he would "straighten him [the child] out." [Chapman Dep., Doc. 60-1 at 43]. Steve Smith spanked the child in the parking lot. [Doc. 51-4 at 6–7]. He then brought the child, who "was very upset" and crying, into the kitchen and

5

pushed the child toward the Plaintiff to have him apologize. [Docs. 51-1 at 47; 51-4 at 7]. The child refused to go to the Plaintiff but instead ran to Warner. Steve Smith then left the kitchen. [Docs. 51-1 at 47; 51-4 at 8]. After Steve Smith left, the child said to the Plaintiff "Tonya, you are a n*****." [Doc. 51-1 at 47] (hereinafter, the "August incident").

Immediately after the August incident, the Plaintiff resigned and told Patricia Warner that "I've got to go. I can't stay here. I can't. I'm sorry. 6 year olds should not know that." [Id.]. On September 26, 2018, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that she was discriminated against based on her race and was harassed and constructively discharged because of the August and July incidents. [Doc. 51-3].

## IV. DISCUSSION

### A. Claims Against OLC

#### 1. Hostile Work Environment/Harassment

Title VII makes it unlawful for an employer to "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment

cause of action." EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001).

Similarly, the pertinent provision of Section 1981 reads as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981(a). The elements for a claim of hostile work environment are the same under Section 1981 and Title VII. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001).

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Boyer-Liberto, 786 F.3d at 277. To establish a hostile work environment under Title VII or Section 1981, a plaintiff must show (1) unwelcome conduct; (2) that conduct was based on the plaintiff's race; (3) the conduct was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment;" and (4) the conduct is imputable to the employer. Boyer-

7

Liberto, 786 F.3d at 277 (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011).  In this case, the Defendants argue the Plaintiff's claim fails because the fourth element, that the alleged harassing conduct was imputable to OLC, is not met.[2]

"[T]he existence of unwelcome conduct, based on an employee's race or sex, that is severe or pervasive enough to create a hostile work environment, is not on its own enough to hold an employer liable." Bazemore v. Best Buy, 957 F.3d 195, 201 (4th Cir. 2020).  There also must be some basis for the harassment to be attributed to the employer. Id.  In determining whether the employer is liable for the harassment the status of the harasser is relevant.  Boyer-Liberto, 786 F.3d at 278.  In cases in which the harasser is a "supervisor," the employer is liable unless the employer can establish that "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Vance v. Ball State Univ., 570 U.S. 421, 424, 133 S. Ct. 2434, 2439 (2013).  If the harasser is a third-party or the victim's co-worker, the

---

[2] As the Plaintiff correctly argues, the use of "the racial epithet of 'n*****' shows an intent to discriminate on the basis of race" by the speaker. [Docs. 52 at 3; 60 at 6 (quoting Jones v. City of Boston, 738 F. Supp. 604, 605 (D. Mass. 1990))]. However, the question in this case is not whether the speaker, a six-year-old child, intended to discriminate on the basis of race, but whether, on this evidence, OLC can be held liable for the statements of the child to one of its employees.

employer is only liable if it was negligent in controlling the working conditions. Vance, 570 U.S. at 424, 133 S. Ct. at 2439 (describing the standard for co-worker harassment); Freeman v. Dal-Til Corp., 750 F.3d 413, 422–23 (4th Cir. 2014) (describing the standard for third-party harassment).

In this case, the Plaintiff asserts a claim of harassment against OLC based on the actions of a third party, the six-year-old grandchild of the company's owners, Michael and Arlene Smith, and son of a supervisor, Steve Smith. As stated above, a third party's actions can provide a basis for recovering against an employer if the employer was negligent in controlling the working conditions. Freeman, 750 F.3d at 422–23. To show negligence, the Plaintiff must show that OLC "knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." Bazemore, 957 F.3d at 201. For an employer to be expected to correct harassment it is the employee's responsibility to notify the employer that a problem exists. E.E.O.C. v. Xerxes Corp., 649 F.3d 658, 674 (4th Cir. 2011). "Evidence of repeated complaints to supervisors and managers creates a triable issue as to whether the employer had notice of the harassment." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 320 (4th Cir. 2008); see Geist v. Gill/Kardash P'ship, 671 F. Supp. 2d 729, 740 (D. Md. 2009) (finding that "a single inappropriate comment made in front of [a manager] is not

9

Case 1:18-cv-00345-MR-WCM   Document 64   Filed 11/24/20   Page 9 of 18

sufficient to put him on notice" of harassment). Once the employer has notice of the harassment, then it is liable to the victim, unless it responded to the harassment with "action reasonably calculated to end [it]." Sunbelt Rentals, 521 F.3d at 319 (internal quotation marks omitted).

In this case, the Plaintiff admits that she did not report the July incident to a supervisor or anyone that could have reprimanded the child or corrected the situation.[3] [Docs. 51-3; 51-1 at 35, 37]. The unconverted evidence is that as soon as Steve Smith was alerted that the child directed a racial slur at the Plaintiff the first time on August 24, 2018, he punished the child. [Docs. 51-1 at 41; 61-4 at 6–7]. Later that same day, when the child again directed a racial slur at the Plaintiff, she resigned before reporting this incident, thus giving OLC no opportunity to react. [Doc. 51-1 at 47].

An employer's remedial actions must be "reasonably likely to stop the harassment," but need not be guaranteed to stop the harassment. See

---

[3] In her charge filed with the EEOC which supports this claim, the Plaintiff asserted that she did not report this incident. [Doc. 51-3]. In her deposition the Plaintiff said that she told her co-worker, Patricia Warner, what had occurred. [Doc. 51-1 at 35]. The Plaintiff's belated assertion that she told Warner about the July incident does not suffice for evidence of notice to a supervisor. The Plaintiff and Warner both worked as cooks. The Plaintiff admitted in her deposition that Warner was not her supervisor as the term is defined for discrimination claims. [Doc. 51-1 at 35] (stating that Patricia Warner did not have the ability to hire or fire people); Vance, 570 U.S. at 431 (including in the definition of a supervisor the ability to hire or fire someone). Therefore, the evidence before the Court establishes that she did not report the July incident to anyone in authority so as to put OLC on notice. See Sunbelt Rentals, 521 F.3d at 320; see also Williams v. Genex Servs., LLC, 809 F.3d 103, 110 (4th Cir. 2015) ("It is well-settled that a plaintiff may not avoid summary judgment by submitting contradictory evidence.").

Xerxes Corp., 639 F.3d at 669. Spanking the child after the child directed a racial slur at the Plaintiff may not have stopped the harassment in this case, but it was an effort directed to reasonably stop the harassment. The Plaintiff offers no suggestion as to what additional punishment should have been directed toward the child to be more effective other than indicating that Steve Smith should not have left the child in the kitchen "to say it again." [Doc. 60-1 at 43]. After the second incident, when Steve Smith would have learned of the insufficiency of his discipline, more stringent measures could have been taken, such as keeping the child at home. But the Plaintiff did not give the Defendants the opportunity, as she immediately quit. An employer cannot be held liable for something of which it was unaware and which it was not given the opportunity to correct. Cooper v. Smithfield Packing Co., Inc., 724 F. App'x 197, 204 (4th Cir. 2018) (holding that when an employee resigned before the company could provide meaningful redress because of the short period of time between the incident and the employee's resignation "a finding of negligence. . . would be tantamount to requiring [the company] to 'exercise an all-seeing omnipresence over the workplace'") (quoting Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006)).

At the summary judgment hearing, the Plaintiff argued to the Court that she "didn't deserve to be called [a racial epithet]." In this the Plaintiff is

absolutely correct. The Plaintiff's forecast of evidence shows that the child used atrocious language that is entirely unacceptable in society. There is no question that "the word 'n****r' is pure anathema to African-Americans, as it should be to everyone." Freeman, 750 F.3d at 422 (internal citations omitted). The Plaintiff certainly did not and does not deserve to be called that epithet or any other epithet by a six-year-old child or by anyone else at her place of employment or anywhere else. But that is not the question before the Court. The question is whether, on this evidence, the employer, OLC, can be held liable for the atrocious conduct of a six-year-old child. Because the Plaintiff has not set forth evidence to create a genuine issue of material fact supporting the claim that the child's actions should be attributed to OLC as a matter of law, the Defendants' Motion for Summary Judgment on the claim of hostile work environment/harassment under Title VII and Section 1981 will be granted as to OLC.

### 2. Constructive Discharge

"An employee is considered constructively discharged 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" Freeman, 750 F.3d at 425 (quoting Honor v. Booz-Allen & Hamilton, Inc., F.3d 180, 186–87 (4th Cir. 2004)). In order to demonstrate constructive discharge, the Plaintiff must prove (1) the

12

deliberateness of OLC's actions, motivated by the Plaintiff's race, and (2) the Plaintiff's working conditions were objectively intolerable. Id.

Here, the Plaintiff did not present sufficient evidence to create a question of fact as to whether OLC deliberately attempted to induce her to resign. The child was a third party and not acting on behalf of the Defendants. Steve Smith told the Plaintiff that he would "straighten" out his son and then punished his child for what the child said. This indicates that he, on behalf of OLC, wanted the Plaintiff to know the situation would be taken care of and that he acted on that intent. The Plaintiff presents no forecast of evidence for which an inference can be drawn that the Defendants deliberately wanted to make the Plaintiff feel that she needed to resign. Therefore, the Court grants summary judgment to OLC on the constructive discharge claim.

### 3. Claims from the First Period of Employment

The Plaintiff also asserts claims regarding other incidents that she states occurred during her first period of her employment from 2004 to 2015. The Plaintiff asserts that sometime in 2009,[4] when OLC created employment identification badges, Arlene Smith photographed the Plaintiff from the front

---

[4] In her Amended Complaint, the Plaintiff alleged that this incident occurred in 2013. [Doc. 39 at 2]. In her deposition, however, she testified that it occurred four years earlier, in 2009. [Doc. 51-1 at 15].

13

and the side (unlike the other employees who only had a front photograph taken) and told the Plaintiff that her badge would have a "slave number" assigned to it. [Doc. 39 at 2]. The Plaintiff also complains of an incident in February of 2014, on her birthday (which she shared with two of Michael and Arlene Smith's grandchildren), where she was given a cake that had a black "hangman" with a noose while the children had a monkey-themed party at the facility. [Id. at 3].[5]

For claims arising under Title VII, the Court is bound by what is asserted in the EEOC charge. See Balas v. Huntington Ingalls Indus., 711 F.3d 401, 407–08 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge."). Claims that are "broader than 'the allegations of discrete acts or acts in [the] administrative charge," are procedurally barred unless the defendants would have been put on notice of the broader claims by investigation of the claims in the EEOC charge. Parker v. Reema Consul. Servs., Inc., 915 F.3d 297, 306 (4th Cir.

---

[5] The forecasts of evidence regarding this event are very confusing. The Plaintiff testified in her deposition that Steve Smith and his wife Beth (who is not a party) brought the cake to her, even though the party was for the two grandsons. Despite the disturbing image allegedly depicted on it, the Plaintiff says she thanked the Smiths for the cake. [Doc. 51-1 at 21-23]. Michael Smith, on the other hand, testified that the Plaintiff herself had prepared and brought the cake, unsolicited, to the grandsons' birthday party. [Doc. 51-3 at 11].

14

2019) (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 508-10 (4th Cir. 2005). In her EEOC charge in this matter, the Plaintiff makes no claim or mention of either of these incidents, or anything relating to the Plaintiff's prior tenure at OLC before she returned to work there in 2018. Therefore, the Defendants would not have been put on notice of these earlier incidents by her charge or by the EEOC investigation of the claims stemming therefrom. The acts involved different people and a different period of employment and are very remote in time (nine years and four years) from the incident complained of herein.

Claims arising under Section 1981 have a four-year statute of limitations period. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383, 124 S. Ct. 1836 (2004). While "hostile work environment claims under Title VII [and Section 1981] are also subject to the 'continuing violation' theory for establishing limitations periods which can make the defendant liable for conduct occurring prior to the statutory period as well," the acts must be part of the "same actionable hostile work environment." Guessous, 828 F.3d at 223–24. The incidents involving the badge and the cake were in an entirely different period of employment and are, therefore, not part of the "same actionable hostile work environment."

For these reasons, the Defendants' Motion for Summary Judgment regarding the Plaintiff's claims as to these earlier incidents will be granted. Likewise, they are so remote in time and relate to an entirely different period of employment, that they do not support the Plaintiff's claim that OLC constructively discharged her in 2018.

### B. Claims Against the Individual Defendants

Under Section 1981, individual supervisors can be held liable if they "'intentionally cause an employer to infringe upon'" the rights secured by Section 1981, such as supervisors who "directed, participated in or even approved of intentional discrimination." Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 483 (D. Md. 2002) (quoting Tillman v. Wheaton-Haven Recreation Association, 517 F.2d 1141, 1145 (4th Cir. 1975).

The Plaintiff claims harassment under Section 1981 as to all the Individual Defendants. The Plaintiff, however, has put forth insufficient evidence to establish intent to infringe on the part of Michael and Arlene Smith. The Plaintiff has presented absolutely no evidence that Michael Smith intended to infringe on her rights and instead admits that he never treated her in a way that she believed to be racially discriminatory. [Doc. 51-1 at 49]. Other than Arlene Smith's badge incident of 2009, which is not at issue in

this case, the Plaintiff presents no evidence that Arlene Smith intended to act in a way that infringed on the Plaintiff's rights.

As to Steve Smith, the Plaintiff has presented no evidence that he personally committed any discriminatory act. The Plaintiff points to the fact that Smith talked to his six-year-old son just before the child used the racial slur on August 24.[6] But that does not give rise to any inference that he *directed* the child to behave in that manner. The Plaintiff's argument on this point is pure conjecture. Moreover, the undisputed evidence is that as soon as Steve Smith learned what the child had said, he corporally punished the child. It would be completely unreasonable to infer that one would direct one's own six-year-old child to commit a wrong and then immediately punish the child for following such orders.

Regarding the July incident, the Plaintiff's evidence fares no better. The Plaintiff asserts that the child said, "My daddy called you a lazy ass black n*****, because you didn't come to work." [Doc. 51-1 at 31]. As explained above, this claim does not survive against OLC because the Plaintiff did not report it. See p. 10, *supra*. Thus, this claim survives only if there is evidence that attributes the statement to Smith's direction. To survive summary

---

[6] The Plaintiff states in her deposition, "I don't care what nobody [sic] said, that man, Steven [sic] Smith told [the child] to say that [racial slur] to me." [Doc. 60-1 at 39]. She also made a similar assertion at the summary judgment hearing.

judgment, however, a forecast of evidence must be a forecast of *admissible* evidence. The child's out-of-court statement asserting what his father is alleged to have said is rank hearsay. As such, it cannot serve as a basis for denying summary judgment.

As the Plaintiff has not presented a forecast of admissible evidence that any of the individual Defendants committed any violation of Section 1981, the Plaintiff's claims against these Defendants must be dismissed.

## O R D E R

**IT IS, THEREFORE, ORDERED,** that the Defendants' Motion for Summary Judgment [Doc. 49] is **GRANTED**, and the Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully directed to enter contemporaneously herewith a Judgment consistent with this Order.

**IT IS SO ORDERED.**

Signed: November 24, 2020

Martin Reidinger
Chief United States District Judge